## CITY OF WICHITA FALLS v. GEYER.

### No. 14513.

Court of Civil Appeals of Texas. Fort Worth.

April 2, 1943.

Rehearing Denied April 30, 1943.

T. A. Hicks and Thelbert Martin, both of Wichita Falls, for appellant.

John Davenport and Kearby Peery, both of Wichita Falls, for appellee.

SPEER, Justice.

This is an appeal by the City of Wichita Falls, defendant below, from a judgment entered on a jury verdict in favor of Casper Geyer, plaintiff below, wherein the latter recovered damages against the former for injuries sustained proximately resulting from a defect in a street inside the corporate limits of the city, alleged to have been negligently created and permitted to be and remain where the accident happened.

Insofar as is necessary to state, the defendant answered by general denial and specially, (1) that if there was such defect in the street as that complained of, the city did not, through any of its authorized agents, or through contract with any person, persons or agencies, cause such defect, and did not have knowledge that same existed, and (2) that the city had previously passed and put into effect a valid ordinance to the effect that it should never be liable for damages in such cases as this, unless and until the alleged injured person gave written notice to the Secretary of the City of such claim, within thirty days after the injury is sustained, stating when, where and how the injury occurred, the extent thereof, etc., the pleading quotes the ordinance. It is alleged that plaintiff had not complied with the provisions of said ordinance.

Plaintiff responded with supplemental and amended pleadings to the effect that his injuries were so great that he was mentally and physically unable to comply with the provisions of the ordinance and that his condition continued until immediately prior to the time such notice was given, about three months after the injury, and said notice was given within a reasonable time after his condition became such that he could comply therewith.

The fourteen points relied upon by defendant for reversal present what we deem three controlling questions for our determination. They are: (1) error of the court in refusing to give defendant's requested summary instruction, and denying its motion for judgment non obstante veredicto, (2) no evidence upon which the jury could find as it did, that the city had notice of the defective condition in the street prior to the injury, and (3) error in entering judgment for plaintiff without any evidence that he had complied with the ordinance relating to notice of claim.

Substantially all of defendant's contentions that it should have had an instructed verdict or judgment notwithstanding the verdict, are based upon the theory that there was no testimony tending to show the City either had notice of the defective condition in the street, nor that notice was given of the claim, as provided by the city ordinance. We overrule these contentions

for the reasons we shall presently demonstrate in connection with the remaining points.

The uncontroverted facts disclose that plaintiff was riding in an automobile with other persons on July 18, 1941, and when the car passed over a ridge or "hump" in the street, plaintiff was thrown against the top of the automobile and fractured his third and fourth cervical vertebrae or sustained what is commonly known as a "broken neck". That he suffered great pain and will continue to so suffer for the remainder of his life; he will be required to wear a brace or frame resting on his shoulders to support his head. He will never be able to perform any kind of gainful labor.

There is no direct evidence as to who caused the "hump" to be in the street. It is certain, however, that it was caused to be there on account of a recent excavation through the pavement to connect a water line with one owned and operated by the City, and through which new line water was to be conveyed by the City to the boundary of a tract of land the City had leased to the federal government upon which to establish "Sheppard Field", in connection with the prevailing war efforts. After the excavation was made in the street, the connection was made and the pipe laid; in filling the excavation, dirt and rocks were heaped up above the pavement level and left for a week or ten days without a guard, signal or other device to warn the public of its presence. There is undisputed testimony that members of the police force passed over the place frequently while patroling the street, but it does not appear that such policemen were charged with any duty to remedy such matters or that they were under any duty to inform other officers charged with the duty of remedying it.

In response to Special Issues, the jury found that the City learned of the presence of the mound in the street prior to the time of plaintiff's injuries; that the City failed to remove the mound or hump before the injury occurred; that such failure was negligence and a proximate cause of the injury; there were other findings of negligence, such as failure to place guard rails, signals, etc., and that these were proximate causes; that plaintiff was injured while riding over the obstacle, and by an answer to an issue found, he had

and would suffer damages in the sum of $7,500.

██ The answer to the issue that defendant learned of the mound in the street prior to the injury was not supported by testimony alone that the police, while patroling the street, knew of its condition, in the absence of testimony that such officers were authorized to remedy it, or that they communicated that information to some one charged with that duty. City of Dallas v. Meyers, Tex.Civ.App., 55 S. W. 742; City of Haskell v. Barker, Tex. Civ.App. 134 S.W. 833; City of Waco v. Ballard, Tex.Civ.App., 246 S.W. 97, writ refused.

We do not consider, however, that because that special issue is without support, the judgment cannot be sustained.

It is undisputed that prior to the occasion in controversy, defendant entered into a written contract with a federal agency to lease for use by the federal government certain premises to be used in connection with the war efforts and the City obligated itself to furnish to the Government during the time the leased premises were used and occupied for said purposes, "adequate utilities and facilities to be available for use by the Government, *at the edge or boundary* of the demised premises as follows: Electricity, gas, telephone, *water,* sewers and an all-weather road". (Emphasis ours.) It is also undisputed that defendant owned and operated its own water system; and that the defendant had exclusive control of its streets. The City Clerk testified that he did not know who actually made the excavation and water connection and laid the water pipe which connected with the city system and the Government's leased premises; that he did not sign a warrant evidencing payment by the City; that the city engineer had charge of all projects in which the City was interested, but he did not know if the engineer supervised this one; the witness said he had no personal knowledge of who did the work but his understanding was that a governmental agency did it; that the City of Wichita Falls did not build the water line.

██ In view of these undisputed facts, the jury finding in response to Special Issue No. 3 (to the effect that the City learned of the offending obstacle in the street prior to the injury) was immaterial, since notice of the condition of the street at that time and place would be imputable

to the City, and was not dependent upon any other form of actual or constructive notice. This because, as shown above, the defendant contracted to furnish water to the Government at the boundary of its leased premises; this would mean that before defendant could comply with its contract, it would have to devise a means of conveying the water to the place of delivery; its only means of so conveying the water was from its mains within its corporate limits; no other person or agency had any right to excavate the street pavement and connect a water line with the City's mains and lay a pipe along or across its streets without its knowledge and consent; it is not too much to assume from the facts before us that in order to perform its contract with the Government, that it authorized and acquiesced in making the excavation and laying the water line from Jefferson Street to the boundary of the Government's lease. Under such conditions the defendant was chargeable with notice of the manner in which the excavation had been filled, and the dangers incident thereto. Its primary liability attached at that time and it owed the duty to plaintiff to exercise reasonable diligence to protect him against injuries resulting therefrom.

█ Relating to the manner of making proof of knowledge to the City of a defective condition in a street, it was held in Willis v. City of San Antonio, Tex. Com.App., 280 S.W. 569, that the facts may be established by circumstantial evidence.

█ In 39 Tex.Jur. 664, § 106, the rule is laid down that when the City consents to an excavation or obstruction in one of its streets, it owes to the public the duty of protection from danger and is liable to any person who sustains injury by reason of its failure to perform such duty.

Our Supreme Court held in Hanks v. City of Port Arthur, 121 Tex. 202, 48 S. W.2d 944, 83 A.L.R. 278, that notice to a city of a defect in its streets need not be proved, when such defects are caused by the City itself or by its agents or contractors under it, since such notice will be presumed and that having thus consented that the dangerous situation should be created it owed to the public the duty of protection against the danger thereof.

To the same effect is the rule announced in 43 C.J. 1042, § 1820, where that text adds this expression: "Where the defect is created by persons acting under a license or permit from the municipality, no notice need be shown, * * * notice of the defect is necessarily implied in such cases."

In view of the facts disclosed by this record and the authorities cited, we overrule these contentions of defendant.

The third group of points relied upon which we have pointed out as raising the question of failure of plaintiff to give the notice to defendant required by the ordinance has given us no little concern.

█ The validity of the ordinance was not attacked by plaintiff, nor do we have any doubt that the City had the legal right to enact such ordinance; similar ordinances have been held valid many times by our courts; but its application to the facts before us is the determining factor. In this case no effort was made to comply with the ordinance by giving the required notice of claim within the thirty days period therein provided, but it is contended that the notice was given on October 22, 1941, about three months after the injuries were sustained by plaintiff, under allegations and proof that he was physically and mentally unable to comply at an earlier date; that he gave the notice within a reasonable time after he became physically and mentally capable of doing so.

The plaintiff testified to this state of facts. In this respect plaintiff was corroborated by Dr. Walker, who testified in response to questions asked, substantially as follows: He had treated plaintiff since the next day after the injuries were sustained, detailing the nature of the injury; that the injury necessarily caused much pain and suffering; that he saw plaintiff many times during the first three months after he was injured and frequently later; based upon his knowledge of those conditions and the effect of the medicine administered, witness said he knew plaintiff did not have the physical ability to do anything and had some doubts that plaintiff had the mental capacity, within three months next after being injured. Witness said he didn't think plaintiff was in a condition to make any decision regarding any matter of importance, whether it was to make a claim to the City or to any one else.

In response to Special Issue No. 9, the jury found that plaintiff was physically and mentally incapable, during thirty days

after receiving the injury, to give notice to the City or of authorizing anyone else to do so, and in response to Special Issue No. 10, it was found that within a reasonable time after plaintiff became physically and mentally able to do so, through his attorney, he gave notice to the City of his injuries and of his claim for damages.

■ It is a universal maxim, worthy of all acceptation, that the law does not seek to compel that to be done which is impossible. Perhaps the latest expression from our Supreme Court holding such ordinances as the one here involved valid and not violative of the State Constitution, is in City of Waco v. Landingham, 138 Tex. 156, 157 S.W.2d 631, 633. There the validity of such an ordinance was attacked because it was discriminatory, in that it could not be given universal application, and would apply to infants of tender years, lunatics, and those too seriously injured to be able to comply. In holding the ordinance valid the court, with reference to the objections raised, said: "Under this rule [previously announced], even should it be held that this charter provision cannot be applied in all instances, still such fact would not render it unconstitutional in instances where. it would not be unreasonable or discriminatory to do so."

In Hanks v. City of Port Arthur, 121 Tex. 202, 48 S.W.2d 944, 83 A.L.R. 278, cited above by us, the court, while discussing an ordinance of a somewhat different nature to the one before us, held, in effect, that while the ordinance there under consideration was valid as against persons capable of complying with it but under facts disclosing the incapacity of claimant, it would not be applicable.

In City of Waco v. Landingham, Tex. Civ.App., 158 S.W.2d 79, it was held that a similar ordinance to the one before us was not in violation of any Constitutional provision, yet exceptions from its enforcement were recognized in cases involving damage to property (City of Waco v. Roberts, 121 Tex. 217, 48 S.W.2d 577) and persons incapacitated by infancy, lunacy or persons otherwise incapable of giving the required notice. Citing Hanks v. City of Port Arthur, supra. In the Landingham case, supra, a certified question was propounded to the Supreme Court and answered, in 138 Tex. 156, 157 S.W.2d 631, cited by us above.

In City of Tyler v. Ingram, Tex.Civ. App., 157 S.W.2d 184, a similar question to that before us was considered. We think the reasoning there is sound and in no way conflicts with what, by analogy, is held in the other cases above discussed by us. It was there held that such an ordinance as that before us did not violate the Constitution (under authorities, there cited), yet those cases, it was said, did not involve facts (such as were being considered by· that court) that the injured person was rendered mentally and physically incapable of giving the required notice. While the Supreme Court subsequently reversed and rendered the above case (City of Tyler v. Ingram, 139 Tex. 600, 164 S.W.2d 516), the question of the duty of one incapacitated by injuries to comply with the ordinance in giving notice was not discussed.

We have concluded that in view of the facts before us, the jury finding of plaintiff's incapacity to give the notice required by the ordinance within the prescribed time, and that the notice was given within a reasonable time after plaintiff had the physical and mental capacity to do so, defendant's contentions raised by these points should be overruled.

■ Another point was assigned and argued, both in defendant's brief and orally, to the effect that in the absence of proof of plaintiff's earning capacity and proof of his life expectancy, the jury was without evidence to support its findings of damages which, under the court's charge, included these items. This point must be overruled on authority of McIver v. Gloria, Tex.Civ.App., 163 S.W.2d 890, affirmed by Supreme Court 169 S.W.2d 710, (not yet published [in State Reports]).

Other' questions are raised which are incidental to those herein discussed, such as improper admission of evidence on plaintiff's physical and mental condition, that the notice of claim and damages did not meet the requirements of the ordinance, and the insufficiency of the testimony to support the jury findings on specified points. We have considered all questions discussed, and believing they are without merit, they are overruled.

Finding no error in the record requiring a reversal, it is our order that the judgment of the trial court be, and it is hereby, affirmed.